UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
RKI CONSTRUCTION, LLC,

                    Plaintiff,                **MEMORANDUM AND ORDER**
                                         14-cv-1803 (KAM) (VMS)

-against-

WDF INC.;
LIBERTY MUTUAL INSURANCE CO.;
ANDRON CONSTRUCTION CORP.; and
TRAVELERS CASUALTY AND SURETY CO. OF
AMERICA,

                    Defendants,

-against-

CITIZENS INSURANCE CO. OF AMERICA;
LEROY KAY; and
ALICE KAY

                    Additional Defendants
                    on the Third-Party Claims.
--------------------------------------X
**MATSUMOTO, United States District Judge:**

        Plaintiff RKI Construction, LLC ("RKI") commenced this

breach of contract action against WDF, Inc. ("WDF"),[1] which filed

a counterclaim against RKI and a third-party claim against Citizens

Insurance Company of America ("Citizens") for breach of contract.[2]

---

[1] Andron Construction Corp. ("Andron") and Liberty Mutual Insurance Company ("Liberty") were originally named as defendants in this action. On April 18, 2016, Andron and Liberty settled with RKI and were dismissed by RKI, without prejudice. (*See* Dkt. 98, Stipulation of Partial Settlement and Partial Dismissal Without Prejudice.) Travelers Casualty and Surety Company of America ("Travelers") is also a defendant but has not asserted any counterclaims.

[2] Although WDF characterizes its claim against Citizens as a "counterclaim," it is mischaracterized. The court will utilize the term "third-party claim" to describe WDF's claims against Citizens.

RKI moves for partial summary judgment on (1) its breach of contract claim against WDF, and (2) on WDF's counterclaim for breach of contract.  Citizens moves for summary judgment on WDF's third-party claim against it for breach of contract.  For the foregoing reasons, the court DENIES RKI's two motions for partial summary judgment against WDF, and GRANTS Citizens' motion for summary judgment against WDF.

## BACKGROUND

### I.   Procedural History

RKI commenced this action on March 20, 2014, and filed the operative amended complaint on March 11, 2015.  (Dkt. 32, Amended Complaint ("Am. Compl.").)  WDF filed its answer to the Amended Complaint, counterclaim against RKI, and third-party claim against Citizens on March 25, 2015.  (Dkt. 38, Answer to Am. Compl. ("Answer").)  The summary judgment motions were fully submitted on May 12, 2016.  Oral argument was heard on December 22, 2016.

### II.  Factual Background

The following facts are undisputed between the parties or are not materially contested.  The claims before the court arise out of a series of construction contracts and subcontracts to build an elementary school in Ridgewood, Queens.  In December 2011, Andron Construction Corp. and the New York School Construction Authority ("SCA") entered into an agreement to begin the construction of the 5-story school, known as PS 290, in Ridgewood,

Queens. (Dkt. 103-1, RKI Statement of Material Facts ("RKI SOF") ¶ 1; Dkt. 105-1, Local Rule 56.1 Counter-Statement of Undisputed Facts as to RKI ("WDF RKI CSOF") ¶ 1.)

In or around October 2012, Andron entered into an agreement with WDF, where WDF would perform as an HVAC subcontractor ("Andron-WDF agreement" or "HVAC subcontractor agreement"). (Dkt. 101-4, Declaration of Alice Kay in Support of Motion for Summary Judgment ("Alice Kay Decl.") Ex. B, Revised Andron Subcontract dated Sept. 26, 2012.) The Andron-WDF agreement indicates that it was a revised version of an earlier, undated, agreement. *Id.* at Citizens 01044. Also, in or around October 2012, WDF and RKI executed an agreement, pursuant to which RKI would perform as an HVAC piping sub-subcontractor ("WDF-RKI agreement" or "sub-subcontractor agreement"). (Dkt. 103-2, Declaration of David Kay, Member of and Project Manager for RKI ("David Kay Decl."), Ex. A, WDF Subcontract Agreement dated May 30, 2012 and executed in October 2012.) RKI agreed with WDF to perform HVAC piping work at the agreed price of $1,252,000.00. (Dkt. 103-1, RKI SOF ¶ 4; Dkt. 105-1, WDF RKI CSOF ¶ 4.) After a change order, the total value of the sub-subcontractor agreement came to $1,283,300.00. *Id.* ¶ 5. Pursuant to the WDF-RKI agreement, RKI retained Citizens, as surety, to issue a performance bond on behalf of RKI. *Id.* ¶ 6. RKI, Citizens, and WDF entered into the A312 Subcontractor Performance Bond ("performance bond")

3

on January 4, 2013.    (Dkt. 101-5, Declaration of Bogda M. B. Clarke, attorney for Hanover Insurance Group, an affiliate of Citizens, in Support of Motion for Summary Judgment ("Clarke Decl.") Ex. A, A312 Subcontractor Performance Bond.)

### a. Project Workflow as Directed by Andron

As the general contractor, Andron was responsible for coordinating the work of all of the contractors on the job site, which included dictating the project schedule and workflow.  (Dkt. 103-1, RKI SOF ¶ 7; Dkt. 105-1, WDF RKI CSOF ¶ 7.)  Andron never provided a written project schedule or priority project schedule to RKI or WDF.  *Id.* ¶ 8.  Andron had a whiteboard on the worksite, which included various dates that related to the flow of work of many of the trades, including the mechanical, engineering and plumbing ("MEP") work.  (*See* Dkt. 103-3, Declaration of Michael S. Zicherman, attorney for RKI ("Zicherman Decl."), Ex. C, emails from WDF Senior Project Manager Denis Limanov, and Ex. D, email between Andron Superintendent Brian VanKleeck and WDF acting Project Manager John Cutrone.)  Andron sometimes referred to the whiteboard schedule as its "live schedule."  *See id.*  The significance and relevance of the whiteboard schedule to whether or not RKI was completing its work in accordance with project schedule is disputed by the parties.  During the entirety of the project, Andron's work and the completion of the project as a whole

was delayed.  (Dkt. 103-1, RKI SOF ¶ 16; Dkt. 105-1, WDF RKI CSOF ¶ 16.)

   **b. RKI's Performance**

       Several issues regarding the adequacy and timeliness of RKI's performance remain disputed.  However, it is undisputed that RKI began preliminary work for the project in May 2012, when it began preparing shop drawings and attending project meetings. (Dkt. 103-1, RKI SOF ¶ 12; Dkt. 105-1, WDF RKI CSOF ¶ 12.)  The MEP rough-in work, RKI's performance of which is a point of contention, was not scheduled by Andron to commence prior to April 2013.  *Id.* ¶ 14.

       Throughout the project, WDF repeatedly insisted and communicated to RKI that RKI was behind schedule and required additional manpower to complete the job.  *Id.* ¶ 25; (*see also* Dkt. 105-2, Declaration of WDF Vice President of Operations Liam McLaughlin ("McLaughlin RKI Decl."), Ex. B, emails from John Cutrone).  RKI did not have workers onsite for a full five day work week until July 2013.  (Dkt. 105-1, WDF RKI CSOF ¶ 7; Dkt. 104-1, Response to WDF Local Rule 56.1 Statement of Material Facts ("RKI SOF Response") ¶ 7.)  On August 15, 2013, WDF issued a field directive to RKI requiring RKI immediately to staff the project with 14 men, which RKI disagreed with at the time.  (Dkt. 103-1, RKI SOF ¶¶ 26-28; Dkt. 105-1, WDF RKI CSOF ¶¶ 26-28.)  On August 22, 2013, John Cutrone, WDF's acting project manager, sent an email

to RKI complaining that RKI was behind schedule, and setting various milestones for completion. (Dkt. 103-2, David Kay Decl. Ex. C, email from Cutrone). The email required that RKI incorporate the changes required in Bulletin No. 7, discussed below, and specified additional deadlines. *Id.* RKI responded to Mr. Cutrone's email on August 22, 2013, contesting the deadlines. (Dkt. 103-2, David Kay Decl. Ex. D, email from David Kay).

### c. SCA Issues Bulletin No. 7

On April 28, 2013 the SCA issued Bulletin No. 7, making certain changes to the project. (Dkt. 103-3, Zicherman Decl. Ex. F, Schedule update at SCA-01456.) Bulletin No. 7 impacted the HVAC work, including RKI's piping work because it required that the pipes be rerouted. (Dkt. 103-1, RKI SOF ¶ 22; Dkt. 105-1, WDF RKI CSOF ¶ 22.) WDF did not issue a written change order to RKI with respect to Bulletin No. 7, but disputes that one was required. *Id.* ¶ 24. The SCA issued a change order for Bulletin No. 7, although it is not clear from the record whether that change order was issued to Andron or WDF. (Dkt. 101-2, Joint Deposition Transcript Appendix ("JDTA") Ex. C, Gentile Dep. at 88:22-89:09 (explaining the SCA generated a change order in the sum of $139,440, but not stating to whom the change order was issued.)

### d. WDF's Nonpayment of RKI

RKI was required to submit invoices to WDF for which WDF could seek reimbursement from Andron and the SCA. RKI contends

that it was not paid for all of the work it performed from January through June 2013. (*See* Dkt. 103-2, David Kay Decl. ¶¶ 21-38; Dkt. 101-6, Declaration of Marc R. Lepelstat, attorney for Citizens, in Support of Citizens' Motion for Summary Judgment ("Lepelstat Decl."), Ex. U, checks paid from WDF to RKI prior to June 2013.) WDF concedes that it did not pay all of the money that RKI requested; rather, it states that it paid all of the money that it believed RKI was entitled to. (Dkt. 105-2, McLaughlin RKI Decl. ¶¶ 29-33.) WDF claims that it made significant reductions to RKI's payment applications because the applications were inflated and requested money for assignments that RKI had not completed, which RKI disputes. *Id.* The parties also dispute whether RKI was aware that WDF, Andron, and/or the SCA were modifying the invoiced percentages of the RKI work completed. *Id.* ¶ 34.

WDF has also withheld money from RKI based on RKI's work on the project from June through September 2013. WDF states that it received $134,274.07 from Andron for work performed by RKI between June and September 2013. *Id.* ¶ 40. WDF asserts that $134,274.07 was credited to RKI as an offset to money owed to WDF by RKI because WDF completed RKI's work under the sub-subcontractor agreement after RKI's purported breach. *Id.* RKI claims that it has not been paid $299,310.84, the amount due for all work by RKI through September 16, 2013. (Dkt. 103-2, David Kay Decl. ¶ 39.)

RKI further claims that it never received a payment of approximately $8,000, that had been approved by WDF, for work performed in June 2013. *Id.*

### e. WDF Issues Notice of Default

On August 28, 2013, Liam McLaughlin, Vice President of Operations at WDF, sent RKI and Citizens a "48-Hour Notice" advising RKI that WDF was considering declaring a default because RKI was not providing the appropriate amount of manpower necessary to complete the project on time. (Dkt. 103-1, RKI SOF ¶ 35; Dkt. 105-1, WDF RKI CSOF ¶ 35; Dkt. 103-2, David Kay Decl. Ex. E, letter from Liam McLaughlin.) In the letter, WDF demanded that RKI complete various tasks within 48 hours. *Id.* Also in the letter, WDF stated that the letter served as a demand against the performance bond issued by Citizens. *Id.* The letter demanded a meeting between the three parties, WDF, RKI, and Citizens. *Id.* On August 29, 2013, RKI responded to the letter, disagreeing with WDF's statement that RKI was not providing the proper amount of manpower to maintain the project schedule, and stating that RKI had been diligently working towards the milestones provided by Mr. Cutrone in his August 22 letter. (Dkt. 103-2, David Kay Decl. Ex. F, letter from David Kay.) In the response, RKI also asserted that it could not complete the cellar piping because it had not received a change order from WDF for Bulletin No. 7. *Id.*

On Friday, September 13, 2013 at 5:23 P.M., Becky Tung, WDF's in-house counsel, sent an email to various individuals at Citizens and RKI stating that "[w]e intend to issue a notice of default to RKI on Monday [two days later]." (Dkt. 105-3, Declaration of Becky Tung, General Counsel for WDF ("Tung RKI Decl."), Ex. C, email dated September 13, 2013, from Tung and Ex. D, email dated September 13, 2013, from Tung.) The parties dispute whether Ms. Tung's email satisfies the requirement of the sub-subcontractor agreement that WDF provide a second 48-hour written notice prior to terminating the sub-subcontractor agreement. (Dkt. 103-1, RKI SOF ¶ 60; Dkt. 105-1, WDF RKI CSOF ¶ 60.)

On Monday, September 16, 2013, WDF sent RKI a "Notice of Default" stating that it was declaring RKI in default of the sub-subcontractor agreement and was terminating RKI pursuant to Article 26 of the sub-subcontractor agreement. (Dkt. 103-1, RKI SOF ¶ 59; Dkt. 105-1, WDF RKI CSOF ¶ 59; Dkt. 103-2, David Kay Decl. Ex. G, letter from Liam McLaughlin.)

**f. Citizens' Performance Bond**

On September 16, 2013, Ms. Tung sent an email to Bogda Clarke, an attorney for Hanover Insurance Group, which is an affiliate of Citizens, regarding WDF's termination of RKI. (Dkt. 102-3, Declaration of Becky Tung ("Tung Citizens Decl.") Ex. E, email from Tung.) Ms. Tung requested a proposed plan of completion for the project from Citizens, and explained that WDF would be

performing RKI's work in the interim. *Id.* She further noted that any work done by WDF in the interim would be charged to RKI and Citizens' account. *Id.* On September 24, 2013, Citizens sent WDF a letter advising that Citizens was undertaking an investigation into WDF's demand that Citizens perform in accordance with the terms of the performance bond. (Dkt. 102-3, Tung Citizens Decl. Ex. F, letter from Jonathan Bondy.) On October 21, 2013, Citizens sent WDF a letter denying WDF's claim under the bond based on: 1) a contractor default because WDF did not pay RKI as was required; and 2) because Citizens did not find RKI to be materially in breach of their obligations under the sub-subcontractor agreement. *Id.* Ex. G, letter from Jonathan Bondy.

## III.  Claims

In the amended complaint, RKI brings claims against WDF for breach of the sub-subcontractor agreement (Dkt. 32, Am. Compl. ¶¶ 26-28, 68-91); account stated, *id.* ¶¶ 29-33; quantum meruit, *id.* ¶¶ 34-38; unjust enrichment, *id.* ¶¶ 39-43; violation of New York General Business Law § 756-a, *id.* ¶¶ 44-48; and enforcement of mechanic's lien, *id.* ¶¶ 56-67.

WDF alleges a counterclaim against RKI and a third-party claim against Citizens. In its answer, WDF alleges that RKI failed to progress the work in accordance with the project schedule and that WDF had to complete the work that RKI did not complete. (Dkt. 38, Answer ¶¶ 32-37.) WDF's third-party claim against Citizens

alleges failure to make a payment to WDF under the performance bond. *Id.* ¶¶ 38-42. Finally, WDF brings a fraudulent misrepresentation third-party claim against Alice Kay and LeRoy Kay, which is not currently before the court. *Id.* ¶¶ 43-53.

## Discussion

RKI moves for summary judgment on the grounds that WDF breached the sub-subcontractor agreement because it improperly terminated RKI based on (1) the failure of WDF to comply with the notice and cure provisions of the sub-subcontractor agreement, and (2) WDF's arbitrary and subjective performance standards. (Dkt. 103-4, RKI Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("RKI Mot.") at 14-29.) Citizens moves for summary judgment against WDF's third-party claim, based on WDF's failure to comply with the conditions precedent of the performance bond. (Dkt. 101-1, Memorandum of Law in Support of Motion for Summary Judgment by Counterclaim Defendant Citizens Insurance Company of America ("Citizens Mot.") at 14-22.) The performance bond required WDF to (1) pay RKI for the work completed, (2) properly terminate RKI, and (3) agree to pay the balance of the contract price to Citizens or to a subcontractor selected to complete the sub-subcontract. *Id.* at 14-22. Citizens also argues that it is not liable to WDF because RKI is not liable to WDF, and Citizens' liability is derivative of RKI's liability. *Id.* at 23-24.

WDF opposes the motion for summary judgment of RKI, asserting that it properly terminated the sub-subcontractor agreement under the notice and cure provisions, and such termination was proper because RKI failed to perform under the sub-subcontractor agreement. (Dkt. 105, Memorandum of Law in Opposition to the Motion by RKI Construction, LLC for Summary Judgment ("WDF RKI Opp.") at 3-9.) With respect to Citizens' motion, WDF contends that it did not fail to comply with the conditions precedent of the performance bond. (Dkt. 102, Memorandum of Law in Opposition to the Motion of Citizens Insurance Company of America for Summary Judgment ("WDF Citizens Opp.") at 3-7.)

## I.   Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate if the movant demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). "A dispute is not genuine unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Shiflett v. Scores Holding Co.,* 601 F. App'x 28, 29 (2d Cir. 2015) (internal quotation marks and citations omitted). A court is required to "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its

favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). The moving party bears the burden of proof that no genuine issues of fact exist, but, once it satisfies this initial burden, the burden then shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Celotex*, 477 U.S. at 330-31. "Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Rosenfeld v. Hostos Cmty. Coll*, 554 F. App'x 72, 73 (2d Cir. 2014) (internal quotation marks and citation omitted).

## II. RKI's Motion for Summary Judgment

### a. Notice and Cure Provision

RKI asserts that WDF is liable for breach of contract because it improperly terminated the sub-subcontractor agreement. Specifically, RKI argues that WDF violated Article 26 of the sub-subcontractor agreement because it did not provide a second written notice after the August 28, 2013 notice. (Dkt. 103-4, RKI Mot. at 21-23.) WDF contends that Ms. Tung's September 13, 2013, email satisfied the second notice requirement and that the termination of RKI was proper. (Dkt. 105, WDF RKI Opp. at 3-5.) For the reasons set forth below, the court denies RKI's motion for summary judgment against WDF on the issue of WDF's allegedly improper termination of the sub-subcontractor agreement because there are disputed issues of material fact as to whether RKI performed and therefore was properly deemed by WDF to be in default, and whether

13

WDF breached the notice and cure provision of the sub-subcontractor agreement.

Article 26 of the sub-subcontractor agreement specifies several events that constitute default by RKI. (Dkt. 103-2, David Kay Decl. Ex. A, at Citizens 00023-24.)[4]  It permits the WDF the following remedy:

> [I]n every such event, if any, each of which shall constitute a default hereunder by Subcontractor, Contractor shall . . . after giving Subcontractor written notice of default and forty-eight (48) hours within which to cure said default, have the right to exercise any one or more of the following remedies: . . .
> (iii) after giving Subcontractor an additional forty-eight (48) hours written notice (at any time following the expiration of an initial forty-eight (48) hours notice and curative period), terminate this Subcontract in whole or part . . . .

*Id.* at Citizens 00024.

Article 10 of the sub-subcontractor agreement governs notices.  *Id.* at Citizens 00011.  It states that "written notice provided for in this [sub-subcontract] shall be deemed given if delivered personally to an officer or partner or similar principal position, as the case may be, of a party or sent by certified mail, return receipt requested, in the custody of the United States Postal Service to the authorized executive or representatives of a party at its address."  *Id.*

---

[4] The sub-subcontractor agreement between WDF and RKI refers to WDF as the "Contractor" and RKI as "Subcontractor."

WDF sent RKI an initial termination notice on August 28, 2013, but it is unclear if the notice was delivered personally to an officer, partner, or similar principal of RKI. (Dkt. 103-2, David Kay Decl. Ex. E, letter from Liam McLaughlin.)  On Friday, September 13, 2013, Ms. Tung sent an email to Michael Zicherman, counsel for RKI, David Kay, a member of RKI, and various other individuals at RKI and Citizens stating that "[w]e will default RKI on Monday [September 16] per the performance bond terms." (Dkt. 105-3, Tung RKI Decl. Ex. D, email from Becky Tung at WDF02868.)  The email was not sent by certified mail or personal delivery. *Id.*

Generally, "[u]nder New York law, 'strict compliance with contractual notice provisions need not be enforced where the adversary party does not claim the absence of actual notice or prejudice by the deviation.'" *Schweizer v. Sikorsky Aircraft Corp.*, 634 F. App'x 827, 829 (2d Cir. 2015) (citing *Fortune Limousine Serv., Inc. v. Nextel Commc'ns*, 35 A.D.3d 350, 826 N.Y.S.2d 392, 395 (N.Y. App. Div. 2006)); *see Vista Outdoor Inc. v. Reeves Family Trust*, --- F. Supp. 3d ----, No. 16-cv-5766, 2017 WL 571017, at *7 (S.D.N.Y. Feb. 13, 2017) (email notice rather than written notice sufficient where defendants received notice and did not claim any prejudice).

RKI's reliance on *Dale v. Indus. Ceramics, Inc.*, 150 Misc. 2d 935, 571 N.Y.S.2d 185 (N.Y. Sup. Ct. 1991) for the

proposition that strict adherence to the notice provision should be enforced, (Dkt. 104, RKI Reply at 3-4), is unavailing as it is contrary the aforementioned Second Circuit and New York State Appellate Division case law.[5] *See also, e.g.*, *Suarez v. Ingalls*, 282 A.D.2d 599, 599-600, 723 N.Y.S.2d 380, 381 (N.Y. App. Div. 2001). Where, however, a construction contract contains a "condition precedent-type notice provision setting forth the consequences of a failure to strictly comply," strict compliance will be required. *Schindler Elevator Corp. v. Tully Constr. Co.*, 139 A.D.3d 930, 931, 30 N.Y.S.3d 707 (N.Y. App. Div. 2016) (dismissing claim where notice was insufficient because notice clause set forth that failure to strictly comply would be deemed waiver of any claims); *see also Northgate Elec. Corp. v. Barr & Barr, Inc.*, 61 A.D.3d 467, 468-69, 877 N.Y.S.2d 36 (N.Y. App. Div. 2009) (distinguishing a contract that did not involve a condition precedent-type notice provision setting forth consequences of failure to strictly comply with a notice clause that provided "in default of such notice the claim is waived").

RKI's arguments that the notice was not effective because of its method of delivery are unpersuasive. RKI has not

---

[5] The additional authorities RKI cites to in its motion for summary judgment are inapposite because the offending party in those cases either did not provide actual notice of termination or failed to provide the contractual cure period before terminating; here, WDF provided the requisite actual notice of termination, albeit not precisely by the means of delivery described in the sub-subcontractor agreement. (*See* Dkt. 103-4, RKI Mot. at 15-21.)

claimed that it did not receive actual notice, nor has it claimed that it was prejudiced as a result of the sending of an email instead of written notice as defined in the sub-subcontractor agreement. *See Thor 725 8th Ave. LLC v. Goonetilleke*, 138 F. Supp. 3d 497, 509-510 (S.D.N.Y. 2015) (actual notice to a location other than the location specified in the contractual notice provision is sufficient where defendants received actual notice and were not in any way prejudiced as a result of the deviation); *Thurston v. Sisca*, No. 14-cv-1150, 2016 WL 4523930, at *6 (N.D.N.Y. Aug. 22, 2016) (email notice did not violate the notice provision because it did not "undermine[] any of the objectives of the notice-requirement provision contained in . . . the Purchase Contract . . . ."). Nor does RKI persuasively argue that the notice clause of the sub-subcontractor agreement sets forth a "condition-precedent type notice provision." The notice provision does not include any of the "linguistic conventions to create conditions precedent," such as "'if,' 'on condition that,' 'provided that,' 'in the event that,' [or] 'subject to.'" *See Israel v. Chabra*, 537 F.3d 86, 93 (2d Cir. 2008) (quoting *Ginett v. Computer Task Grp.*, 962 F.2d 1085, 1100 (2d Cir. 1992)). Therefore, RKI's motion for summary judgment on the grounds that WDF's notice improperly terminated the sub-subcontractor agreement is denied.[6]

---

[6] RKI's argument that WDF is estopped from arguing that the mode of service is effective, (Dkt. 104, RKI Reply at 4-5), is not considered here because it was

**b. RKI's Performance**

RKI also argues that it is entitled to summary judgment against WDF on its claim for breach of contract, and WDF's counterclaim for breach of contract because WDF arbitrarily terminated the contract.  (103-4, RKI Mot. at 23-29.)  RKI asserts that "the terminating party (in this case WDF) has the legal burden to establish that the other party (in this case RKI) has materially breached its contract . . . ."  *Id.* at 23.  RKI claims that WDF did not base its decision to terminate the contract "on any objective verifiable criteria."  *Id.* at 26.  WDF counters that the demands by WDF were reasonable and permitted under Article 7 of the sub-subcontractor agreement.  (Dkt. 105, WDF RKI Opp. at 5-9.)  Because there are triable issues of fact as to whether or not RKI performed under the contract, and whether WDF properly deemed RKI to be in default, RKI's motion for summary judgment on its claims against WDF, and on WDF's counterclaim against RKI, is denied.

Under New York law, the elements for a breach of contract claim are a "contract, the plaintiff's performance under the contract, the defendant's breach, and damages resulting from the breach."  *Nature's Plus Nordic A/S v. Natural Organics, Inc.*, 980 F. Supp. 2d 400, 408 (E.D.N.Y. 2013) (internal citation omitted).

---

raised for the first time in the reply.  *See Mullins v. City of N.Y.*, 653 F.3d 104, 118 n.2 (2d Cir. 2011).

Article 26(a) of the sub-subcontractor agreement permits WDF to declare a default if RKI "fail[s] to supply the labor, materials, equipment, supervision and other things required of it in sufficient quantities for sufficient durations and of required quality to perform the Work with the skill, conformity, promptness and diligence required hereunder . . . ." (Dkt. 103-2, David Kay Decl. Ex. A, at Citizens 00023.) Article 7 of the sub-subcontractor agreement prescribes RKI's obligation to timely perform under the sub-subcontractor agreement. *Id.* at Citizens 00007-8. Article 7 further states that "[WDF] may direct acceleration of the Work in order that it may be performed in advance of the schedules, time requirements and Project requirements described in this Article 7. If so directed, Subcontractor shall increase its staff or work overtime, or both." *Id.* at Citizens 00008.[7]

The record is replete with disputed issues of material fact regarding RKI's purported failure to perform, particularly in light of WDF's contemporaneous requests that RKI increase manpower at the project site. WDF submits evidence, disputed by RKI, that RKI was perpetually behind schedule and otherwise failed to perform

---

[7] RKI's citation to *United States v. O'Brien*, is inapposite as the contract at issue in *O'Brien* did not appear to have a diligence clause similar to Article 7. 220 U.S. 321, 327 (1911) ("Under its terms the United States was not concerned with the stages of performance, but only with the completed result. . . . [I]t would be a very severe construction of the contract . . . to real the reservation of a right to annul for a want of diligence *not otherwise promised* . . . .") (Emphasis added).

the contract. Liam McLaughlin, the Vice President of Operations for WDF, testified that he was able to tell that RKI was not performing its work properly and on time based on his forty years of construction experience. (Dkt. 101-2, JDTA Ex. A, McLaughlin Dep. at 24:17-28:16.) Antonio Gentile, the SCA's Project Officer, also testified at his deposition that RKI was behind schedule and that RKI had an inadequate number of men performing on the construction site. (Dkt. 101-2, JDTA Ex. C, Gentile Dep. at 20:03-17; 137:03-139:25.) Robert M. Loweke, Citizens' expert witness, testified at his deposition that some of RKI's work required correcting. (Dkt. 101-2, JDTA Ex. D, Loewke Dep. at 15:14-20.) WDF has also submitted evidence that it viewed RKI as not supplying sufficient manpower to adequately perform its work. (Dkt. 105-2, McLaughlin RKI Decl. Ex. B (contemporaneous emails from WDF complaining to RKI that RKI was not supplying sufficient manpower to adequately complete the job); see also Dkt. 105-3, Tung RKI Decl. Ex. C at WDF02872 (email from the SCA expressing "grave concerns" about RKI's manpower on site).) RKI disputes WDF's evidence and asserts that that it "did perform its work in an adequate and timely manner, and did not delay the work of other trades." (Dkt. 104-2, Reply Declaration of David Kay ("David Kay Reply Decl.") ¶ 2.) RKI counters Mr. Gentile's testimony by stating that the SCA never told RKI that it needed more manpower or that RKI was delaying the project, and that "even if Mr.

McLaughlin's friends at the SCA did ask RKI to add more workers on the job, this does not mean that RKI was objectively behind schedule . . . or that it was in default of its contractual obligations." *Id.* ¶ 13.   Further, RKI states that no project schedule was ever provided to RKI by WDF. (Dkt. 103-1, RKI SOF ¶ 8.)

Moreover, the parties dispute the significance of Andron's whiteboard schedule.   RKI explains that the Andron whiteboard schedule did not show dates for their work; RKI claims that this shows that WDF's deadlines were arbitrary. (Dkt. 103-1, RKI SOF ¶ 33; Dkt. 103-2, David Kay Decl. ¶ 46; *id.* Ex. D.) WDF argues that the lack of dates on Andron's whiteboard schedule shows that RKI's performance was so poor that completion dates could not even be estimated. (Dkt. 105-2, McLaughlin RKI Decl. ¶¶ 26-28.)   Neither party has presented the court with evidence or testimony from Andron interpreting the whiteboard schedule and evidence whether RKI's performance was deficient.

Finally, the parties dispute whether or not the work prescribed by Bulletin No. 7 was within the scope of the sub-subcontractor agreement.   (*Compare* Dkt. 105-2, McLaughlin RKI Decl. ¶ 20 (explaining that, at the time of this motion, Andron still had not yet issued a change order to WDF under the Andron-WDF agreement) *with* Dkt. 104-2, David Kay Reply Decl. ¶ 23 (stating that the SCA issued a change order to Andron for Bulletin No. 7).)

The parties have not provided the court with a copy of Bulletin No. 7, but have only provided a letter from Andron to the SCA summarizing it. (Dkt. 103-3, Zicherman Decl. Ex. F at SCA-01455-56.) Nor have the parties presented testimony from Andron, SCA, or any other witness regarding whether or not the work described in Bulletin No. 7 was within the scope of the sub-subcontractor agreement. Because of the numerous issues of material fact, including those described above, the court denies RKI's motion for summary judgment on its claims against WDF, and on WDF's counterclaim for breach of contract.

## III.   Citizens' Motion for Summary Judgment

Citizens moves for summary judgment on WDF's third-party claim because WDF failed to strictly comply with the conditions precedent set forth in the performance bond. (Dkt. 101-1, Citizens Mot. at 1, 14-22.) The court agrees, and grants Citizens' motion for summary judgment.

Citizens argues that WDF failed to comply with the third requirement under the performance bond, that the "Contractor has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a subcontractor selected to perform the Construction Contract in accordance with the terms of the contract with the Contractor." (Dkt. 101-5, Clarke Decl. Ex. A § 3.3.) Citizens argues that this requirement is a condition precedent, and therefore WDF's failure

22

to comply with it discharges Citizens from its obligations.  (Dkt. 101-1, Citizens Mot. at 19-20.)  WDF does not dispute that it did not agree to pay Citizens the amount due under the sub-subcontractor agreement.  Instead, WDF contends that it was never given the opportunity to "agree to tender the contract price to [Citizens] since Citizens had denied WDF's Bond claim before there was any indication that Citizens would have otherwise taken over the Project in accordance with the Bond."  (Dkt. 102, WDF Citizens Opp. at 5.)

Pursuant to the performance bond, Citizens' obligations arise only if WDF has notified Citizens that it was considering placing RKI in default, WDF has declared RKI in default, and WDF has agreed to pay the balance of the contract price to Citizens or to a subcontractor selected to perform the construction contract. (Dkt. 101-5, Clarke Decl., Ex. A § 3.1-3.3.)  Citizens' obligations pursuant to paragraph 4 of the performance bond, to arrange for completion of the construction or to pay WDF, arise after WDF "has satisfied the conditions of Paragraph 3."  *Id.* § 4.

As Citizens points out, Paragraph 3 of the performance bond sets forth strict conditions precedent to its duties under the performance bond, and courts have required strict adherence in cases involving similar bond provisions.  *Archstone v. Tocci Bldg. Corp of N.J., Inc.*, 119 A.D.3d 497, 498, 990 N.Y.S.2d 44 (N.Y. App. Div. 2014) ("[P]aragraph 3 of the subject AIA A312 performance

bond contains express conditions precedent to the liability of the surety under the bond. Since the plaintiffs failed to strictly comply with the conditions of the bond, the Supreme Court properly granted [surety's] motion for summary judgment [for the claims against it]."); *East 49th St. Development II v. Prestige Air & Design, LLC*, 938 N.Y.S.2d 226 (Table), 2011 WL 4599708, at *9–10 (Sup. Ct. Kings. Cnty. Oct 6, 2011) (finding that where plaintiffs did not offer contract balance pursuant to § 3.3, claims against surety must be dismissed).

The Second Circuit has reached the same conclusion as state courts in analyzing bond requirements that "were in the form of" an American Institute of Architects A312 bond at issue here. *See U.S. Fidelity and Guar. Co. v. Braspetro Oil Services Co.*, 369 F.3d 34, 58 (2d Cir. 2004) ("As another condition precedent to the sureties' Obligations under the Bonds, the Obligees, after declaring the Consortium in default, were required to pay the Sureties the 'Balance of the Contract Price' in each of the Contracts . . . a not atypical provision.") The Second Circuit concluded that the condition precedent was satisfied where the obligee sent a letter stating that "Pursuant to paragraph 3.3 of the [bond] . . . [obligee] agrees to pay the [B]alance of the Contract Price to the [S]urities." *Id.* at 59.

WDF unpersuasively argues that "WDF could never agree to tender the contract price to [Citizens] since Citizens had denied

WDF's Bond claim before there was any indication that Citizens would have otherwise taken over the Project in accordance with the Bond." (Dkt. 102, WDF Citizens Opp. at 5.) WDF does not offer any plausible excuse or reason for its failure to satisfy the express conditions precedent before Citizens denied payment, or any contrary interpretation of the performance bond or case law. Further, WDF does not dispute that it failed to offer to pay Citizens the balance of the construction contract. *Id.* Unlike the notice provision of the sub-subcontractor agreement, discussed above, paragraph 3 of the performance bond constituted a strict condition precedent with which WDF failed to comply. Accordingly, Citizens' motion for summary judgment is granted, and WDF's third-party claim against Citizens is dismissed.[8]

---

[8] Because the court grants Citizens' motion for summary judgment on the above mentioned grounds, it need not reach Citizens' argument regarding WDF's payment to RKI and associated setoffs. (Dkt. 101-1, Citizens Mot. at 15-19.)

## Conclusion

For the reasons stated herein: (1) RKI's motion for summary judgment on its claim against WDF is DENIED; (2) RKI's motion for summary judgment on WDF's counterclaim is DENIED; (3) Citizens' motion for summary judgment against WDF's third-party claim is GRANTED, and WDF's third-party claim against Citizens is dismissed. The remaining parties shall provide a joint pretrial scheduling order within twenty-one (21) days of this Memorandum & Order.

**SO ORDERED.**

Dated:      April 3, 2017
            Brooklyn, New York

                                    _____/s/_____
                                    Kiyo A. Matsumoto
                                    United States District Judge